J-S34015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROBERT LEE LOMAX | : | No. 470 MDA 2021 |

Appeal from the Order Entered March 3, 2021
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0001063-2020

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                **FILED: FEBRUARY 14, 2022**

The Commonwealth appeals from the Order entered in the Court of Common Pleas of Adams County granting Appellee Robert Lee Lomax's Motion to Suppress. The Commonwealth argues that the suppression court erred in suppressing evidence obtained by a state trooper who, after initiating a valid traffic stop based on a broken brake light, ordered Appellee to exit the car and began an unrelated investigation based solely on the smell of unburnt marijuana. After careful review, we affirm.

We glean the following facts from the testimony at the suppression hearing and the trial court's opinion accompanying its suppression order. On May 6, 2020, Trooper Justin Horan of the Pennsylvania State Police was on patrol with Trooper Matthew Kile on North Fourth Street in Gettysburg. As he was driving, Trooper Horan noticed a maroon Cadillac with dark window tint traveling northbound. Based on a suspicion that the tint may have violated

the traffic code, he turned his cruiser around and began following the Cadillac. While he followed the car, he noticed that several taillights were not working. Based on the broken taillights, he initiated a traffic stop.

During the traffic stop, Appellee was cooperative and calm. Trooper Horan did not notice any behavior suggesting impairment. N.T. Suppression 2/8/21, at 29. He did, however, notice the smell of fresh, unburnt marijuana in the car. *Id.* at 9. He asked Appellee for his driver's license, which Appellee gave him. He then ordered Appellee out of the car.

After Appellee exited the car, Trooper Horan told him that the reason he asked him to exit the car was that he could smell marijuana. He asked Appellee if he had smoked marijuana recently. Appellee replied that he had not and showed Trooper Horan his official medical marijuana card.

Trooper Horan then returned to his cruiser, turned off his mobile video recorder ("MVR"), and spoke with Trooper Kile. He then turned the MVR back on, returned to Appellee, and asked again when he last smoked marijuana. Appellee told Trooper Horan that he had smoked marijuana approximately four hours before the traffic stop. Based on this answer, Trooper Horan ordered Appellee to perform field sobriety tests. After the tests, Trooper Horan arrested Appellee for driving under the influence of marijuana.

The Commonwealth charged Appellee with Driving Under the Influence of a Controlled Substance ("DUI-CS"): Schedule 1; DUI-CS: Metabolite, DUI-

CS: Impaired Ability, Careless Driving, General Lighting Requirements-Rear Lighting.[1]

Appellee moved to suppress all evidence obtained after Trooper Horan ordered Appellee to exit the vehicle. The court held a suppression hearing on February 8, 2021, at which Trooper Horan was the sole witness. At the hearing, Trooper Horan specified that, based on his experience with marijuana, the odor of marijuana was "fresh," as opposed to "burnt." N.T. at 9. He also testified that he ordered Appellee out of the car "for standard field sobriety testing" based solely on the odor and Appellee's "glassy and bloodshot" eyes. *Id.* at 9-10.

On cross examination, he testified that he did not see Appellee drive in any way that indicated impairment, and that Appellee obeyed all traffic laws other than the brake light violation. *Id.* at 23-24. He agreed that, at the time of the stop, there was "no indication of impairment," and that Appellee was calm, cooperative, and that his behavior did not in any way suggest that he was impaired. *Id.* at 24-29. The only evidence he had of impairment, he reiterated, was the smell of "fresh" marijuana and Appellee's "glassy, bloodshot eyes." *Id.* at 30-32.

On March 2, 2021, the suppression court granted the motion and suppressed all evidence collected after Trooper Horan ordered Appellee to exit the vehicle, including Appellee's admission that he had smoked marijuana and

---

[1] 75 Pa.C.S. § 3802(d)(1)(i), (d)(1)(iii), and (d)(2); 3714(a); and 4303(b).

the results of the field sobriety test. In its opinion accompanying the order, the court found that Trooper Horan's testimony that he noticed Appellee's glassy eyes before he ordered him to exit the car was not credible.

On March 9, 2021, the Commonwealth filed a Motion for Reconsideration, which the court denied on March 26, 2021. This timely appeal followed. Both the Commonwealth and the suppression court have complied with Pa.R.A.P. 1925.

The Commonwealth presents the following issue:

Did the Suppression Court err in suppressing all evidence after Appellee was told to exit his vehicle, based on a misapplication of required standards of suspicion required for police interaction?

Commonwealth's Br. at 7.

On review of a grant of a suppression motion, our review "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Stem**, 96 A.3d 407, 409 (Pa. Super. 2014) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the suppression court." **In re L.J.**, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). We defer to the suppression court, "as factfinder[,] to pass on the credibility of witnesses and the weight to be given to their testimony." **Commonwealth v. Elmobdy**, 823 A.2d 180, 183 (Pa. Super. 2003). "[H]owever, we maintain *de novo* review over the suppression court's legal conclusions." **Commonwealth v. Brown**, 996 A.2d 473, 476 (Pa. 2010).

We categorize police interactions with members of the public into three general tiers of increasing intrusiveness, which require increasing levels of suspicion on the part of an officer who initiates them: (1) mere encounters, which require no suspicion; (2) investigative detentions, which require reasonable suspicion; and (3) custodial detentions, which require probable cause. *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000).

A traffic stop is a special kind of seizure, which a police officer may only initiate if he has reason to believe that a violation of the traffic code has occurred. *Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013). The level of required suspicion turns on the kind of violation in question: if it is the kind of violation that would require further investigation to prove, the officer needs a reasonable suspicion; if it is the kind of violation that is immediately apparent and would not require any further investigation, the officer needs probable cause. *Id.* In either case, the officer's authority for the seizure extends only as long as is necessary to attend to the business of the stop. *Commonwealth v. Palmer*, 145 A.3d 170, 173 (Pa. Super. 2016).

Outside of the context of a traffic stop, an officer's order for an occupant to exit a vehicle is a show of authority that transforms the encounter into at least an investigative detention, requiring reasonable suspicion. *See Commonwealth v. Boswell*, 721 A.2d 336, 340 (Pa. 1998). During the course of a valid traffic stop, however, an officer may order occupants to exit the vehicle as a matter of course. *Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa. Super. 2019). This authority lasts only as long as the duration

for the authority of the stop itself. ***Commonwealth v. Mattis***, 252 A.3d 650, 655 (Pa. Super. 2021). An officer's order for a driver to exit the vehicle once the authority for the original stop has expired initiates a new investigative detention, requiring independent reasonable suspicion of additional illegal activity. ***Id.***

An officer's authority to detain a driver during a traffic stop lasts only as long as is necessary to investigate the infraction that provoked the stop, issue a citation, and attend to any related safety concerns. ***Rodriguez v. U.S.***, 575 U.S. 348, 354-55 (2015). When an officer abandons the investigation of the underlying violation and begins questioning the driver about unrelated criminal activity, he effectively ends the traffic stop and initiates an independent investigative detention. ***Mattis***, 252 A.3d at 656. To lawfully do so requires independent reasonable suspicion. ***Id.***; ***see also Commonwealth v. Prizzia***, 260 A.3d 263, 272 (Pa. Super. 2021) (trooper lawfully began investigating possible DUI after initiating a traffic stop based on a window tint violation because he developed independent reasonable suspicion that driver was intoxicated).

Demonstrating reasonable suspicion requires that the detaining officer "articulate something more than an inchoate and unparticularized suspicion or hunch." ***Commonwealth v. Jefferson***, 256 A.3d 1242, 1248 (Pa. Super. 2021) (citation omitted). In determining whether the Commonwealth has met this burden, courts must make an objective inquiry into whether, based on "the facts available to [the] police at the moment of intrusion," a reasonable

- 6 -

officer would believe the action was appropriate. ***Id.*** (citation omitted). Information that the detaining officer discovers before and during the initial traffic stop can support his reasonable suspicion justifying a subsequent detention. ***See generally In Interest of A.A.***, 195 A.3d 896 (Pa. 2018). "[I]nformation discovered after the [subsequent] detention has begun," however, cannot. ***Commonwealth v. Mackey***, A.3d 221, 232 (Pa. Super. 2017).

In the past, Pennsylvania courts have held that, because marijuana is illegal to possess, the smell of marijuana alone can be sufficient to establish a reasonable suspicion of criminal activity. ***See, e.g., In the Interest of A.A.***, 195 A.3d at 904 (noting that "the odor of marijuana alone, particularly in a moving vehicle, is sufficient to support at least reasonable suspicion"). Due to the legalization of medical marijuana in the Commonwealth, however, our Supreme Court has recently revisited the assumptions underlying this inference, sometimes referred to as the "plain smell doctrine," in ***Commonwealth v. Hicks***, 208 A.3d 916, 945 (Pa. 2019) and ***Commonwealth v. Barr***, No. 28 MAP 2021, 2021 WL 6136363 (Pa. Dec. 29, 2021).

In ***Hicks***, our Supreme Court held that "conduct in which hundreds of thousands of Pennsylvanians are licensed to engage lawfully" is, on its own, "an insufficient basis for reasonable suspicion that criminal activity is afoot." ***Hicks***, 208 A.3d at 945 (Pa. 2019). As such, the Court held that allowing the mere possession of an item whose possession is regulated under a licensing

scheme to establish, on its own, reasonable suspicion to support an investigatory detention "unjustly places the onus upon the citizen to demonstrate that her possession of the [object] is **not** criminal, reversing the constitutional mandate that the police officer must establish a valid basis for the intrusion upon her privacy in the first instance." *Id.* at 944 (emphasis in original).

In *Barr*, the Court recognized that, due to the passage of the Medical Marijuana Act, the possession of marijuana belongs to this category of licensed activity. *Barr* 2021 WL 6136363 at \*12-13. As such, "one's liberty may not be abridged on the sole basis that a law enforcement officer detected the smell of marijuana[.]" *Id.* at \*14. While the *Barr* Court only directly considered the question of whether the smell of marijuana can meet the higher standard of probable cause, it anchored its logic in *Hicks*' broader proscription against allowing "conduct for which the individual obtained a license to serve as the exclusive basis for the deprivation of the licensee's liberty." *Id.*

In the instant case, in its opinion accompanying the Suppression Order, the suppression court found that "at the time Troper Horan removed [Appellee] from his vehicle, the Trooper did not have reasonable suspicion of criminal activity that would warrant further investigation." Supp. Ct. Op. at 5. Specifically, it found that "Trooper Horan did not articulate any facts to suggest [Appellee] recently smoked or ingested marijuana, or that [Appellee] was in any way impaired[.]" *Id.* Instead, "the smell of fresh marijuana without any evidence of impairment . . . only shows that [Appellee] may have lawfully

possessed marijuana earlier that day[.]" ***Id.*** at 6. As such, "Trooper Horan did not articulate what information he possessed to justify the temporary investigative detention of" Appellee. ***Id.***

We agree with the suppression court's conclusions. Trooper Horan initiated the traffic stop based on a broken taillight, which is a traffic violation that requires no further investigation before issuing a citation. When Trooper Horan ordered Appellee to exit the vehicle and began questioning him about the smell of marijuana, he initiated an independent investigative detention to investigate additional potential illegality. To lawfully do so, Trooper Horan needed a reasonable suspicion of criminal activity. The only credited evidence justifying Trooper Horan's suspicion, however, was the smell of fresh marijuana. Absent any other indicia of wrongdoing this smell cannot objectively suggest anything more than the possession of a substance that many Pennsylvanians can legally possess. As such, it cannot, on its own, establish the kind of reasonable suspicion necessary to initiate an investigative detention.

In its brief, the Commonwealth does not argue otherwise. Instead, it argues that Trooper Horan developed a reasonable suspicion to detain Appellee based on the smell of the marijuana and Appellee's eventual response, after repeated questioning, that he had smoked marijuana several hours before the stop. Trooper Horan only learned this information, however, long after he initiated the investigative detention. The Commonwealth cannot use information that Trooper Horan only learned after initiating the

investigative detention in order to retroactively justify his decision to detain Appellee in the first place. The Commonwealth's argument thus fails.

The suppression court correctly determined that Trooper Horan initiated an investigative detention when he ordered Appellee to exit his vehicle and began questioning him about matters unrelated to the original traffic stop, and that he lacked reasonable suspicion required to do so. As such, the suppression court properly suppressed the evidence resulting from the detention.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/14/2022