J-A26037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:         PENNSYLVANIA
:
v.                  :
:
:
:
HENRY JOHNSON             :
:
Appellant       :   No. 1907 EDA 2020

Appeal from the Judgment of Sentence Entered September 9, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0003591-2019

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

CONCURRING/DISSENTING MEMORANDUM BY STABILE, J.:

**FILED JUNE 8, 2022**

I concur with the Majority's decision to remand this matter for further consideration, but respectfully dissent as to how suppression should be addressed upon remand.

As recounted by the trial court, on the evening of May 3, 2019, Appellant was driving a vehicle in the city of Philadelphia when Philadelphia Police Officer Nabil Assad performed an investigatory vehicle stop because the driver's side headlight was out and the high-beam lights were engaged.  The officer approached the vehicle and asked for Appellant's license, registration and insurance.  Appellant complied.  The officer noticed that Appellant's chest was rising in and out, he was breathing at a rapid pace, and his hands were shaking when he handed over his driver's license.  The officer also noticed an odor of fresh marijuana coming from the vehicle.  After consulting with his partner,

the officer asked Appellant to step out of his vehicle and performed a frisk. Nothing was found. After the frisk, Appellant was asked to step towards the back of the vehicle where Officer Assad's partner was standing. At that moment, Officer Assad looked down into the vehicle and noticed a black and purple firearm on the driver's side floorboard. He then asked the female passenger to step out of the vehicle, which she did. Officer Assad recovered the firearm and then searched the vehicle. He found in the center console a clear gray pillbox with marijuana residue inside.[1]

Appellant was charged with three counts of Violation of the Uniform Firearms Act (hereafter, "VUFA") under 18 Pa.C.S.A. §§ 6105 (possession of firearm prohibited), 6106 (carrying a firearm without a license) and 6108 (carrying a firearm on a public street in Philadelphia), and possession of a small amount of marijuana. The marijuana charge was subsequently dropped pre-trial. After a non-jury proceeding, Appellant was found guilty of the firearm charges. He now challenges on appeal the denial by the trial court of his motion to suppress the firearm recovered from his vehicle and statements made to police following the vehicle stop. Appellant maintains the physical evidence and statements were the subject of an investigative detention lacking reasonable suspicion, the physical evidence was unlawfully seized without a warrant or exigent circumstances, and the statements were unlawfully obtained.

---

[1] The trial court does not indicate whether Appellant was placed under arrest at this time.

In its Pa.R.A.P. 1925(a) opinion, the trial court stated that although it believed its rulings were correct at the time of trial, it now asks for a remand to reconsider its suppression ruling in light of the impact that the recent cases of **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020) and **Commonwealth v. Barr**, 266 A.3d 25 (Pa. 2021) may have on the motion to suppress. Trial Court Opinion, 2/5/21, at 4-5. *The trial court indicated that its denial of the motion to suppress was based on a finding that the smell of marijuana emanating from inside Appellant's vehicle is what provided probable cause for the subsequent search of the vehicle and seizure of the firearm.* It did not evaluate any other factors in conjunction with the odor of marijuana in its probable cause analysis. The trial court therefore questions whether without any other indicators in the record that Appellant was involved in criminal activity, the police officer had probable cause to search the vehicle under the new standards enunciated under **Alexander** and **Barr**. **Id.** at 5-6. The Majority agrees, and further opines that a remand is necessary so the trial court can consider the underlying basis for Officer Assad's frisk and subsequent detention of Appellant, since it was only after those acts that the officer observed the gun in plain view. Majority Memorandum, at 14. In particular, citing **Commonwealth v. Hicks**, 208 A.3d 916, 921 (Pa. 2019), the Majority believes the trial court did not consider the necessary prerequisite that the police reasonably suspect that Appellant was armed and dangerous when proceeding from a lawful investigatory stop to a frisk. **See** Majority Memorandum, at 15. Appellant likewise contends that he was subject to an

unlawful **Terry**[2] stop and frisk and therefore, all subsequent evidence obtained must be suppressed. In response, the Commonwealth believes this to be a simple case. The Commonwealth contends that the gun was discovered "out in the open" after the officer, as he was entitled to do in connection with a lawful traffic stop, directed Appellant to exit the car. For the reasons explained below, I believe that the question of suppression cannot be answered by focusing on the legality of the frisk. I further disagree with the trial court's and Majority's contention that suppression is affected by the **Alexander** and **Barr** decisions, as those cases addressed the warrantless search of a vehicle and not, as here, an investigative detention based upon reasonable suspicion.

In one of our recently unpublished memoranda, we summarized the law regarding investigatory detentions in connection with a lawful vehicle stop.

> A traffic stop is a special kind of seizure, which a police officer may only initiate if he has reason to believe that a violation of the traffic code has occurred. **Commonwealth v. Brown**, 64 A.3d 1101, 1105 (Pa. Super. 2013). The level of required suspicion turns on the kind of violation in question: if it is the kind of violation that would require further investigation to prove, the officer needs a reasonable suspicion; if it is the kind of violation that is immediately apparent and would not require any further investigation, the officer needs probable cause. **Id.** In either case, the officer's authority for the seizure extends only as long as is necessary to attend to the business of the stop.

---

[2] In **Terry v. Ohio**, 392 U.S. 1 (1968), the United States Supreme Court held that where a reasonably prudent officer is warranted in the circumstances of a given case in believing that his safety or that of others is endangered, he may make a reasonable search for weapons of the person believed by him to be armed and dangerous, regardless of whether he has probable cause to arrest that individual or has the absolute certainty that the individual is armed and dangerous.

- 4 -

> ***Commonwealth v. Palmer***, 145 A.3d 170, 173 (Pa. Super. 2016).
>
> Outside of the context of a traffic stop, an officer's order for an occupant to exit a vehicle is a show of authority that transforms the encounter into at least an investigative detention, requiring reasonable suspicion. ***See Commonwealth v. Wright***, 224 A.3d 1104, 1109 (Pa. Super. 2019). During the course of a valid traffic stop, however, an officer may order occupants to exit the vehicle as a matter of course. ***Commonwealth v. Wright***, 224 A.3d 1104, 1109 (Pa. Super. 2019). This authority lasts only as long as the duration for the authority of the stop itself. ***Commonwealth v. Mattis***, 252 A.3d 650, 655 (Pa. Super. 2021). An officer's order for a driver to exit the vehicle once the authority for the original stop has expired initiates a new investigative detention, requiring independent reasonable suspicion of additional illegal activity. ***Id.*** An officer's authority to detain a driver during a traffic stop lasts only as long as is necessary to investigate the infraction that provoked the stop, issue a citation, and attend to any related safety concerns. ***Rodriguez v. U.S***., 575 U.S. 348, 354-55 (2015). When an officer abandons the investigation of the underlying violation and begins questioning the driver about unrelated criminal activity, he effectively ends the traffic stop and initiates an independent investigative detention. ***Mattis***, 252 A.3d at 656. To lawfully do so requires independent reasonable suspicion. ***Id.***; ***see also Commonwealth v. Prizzia***, 260 A.3d 263, 272 (Pa. Super. 2021) (trooper lawfully began investigating possible DUI after initiating a traffic stop based on a window tint violation because he developed independent reasonable suspicion that driver was intoxicated).

***Commonwealth v. Lomax***, _____ A.3d _____, 2022 WL 439087 (Pa. Super. filed February 14, 2022). Applying these well-established principles to the instant case, there is no question the police had the right to stop Appellant's vehicle for the headlight violations. As well, the police had the right to order Appellant out of his vehicle in connection with the vehicle stop. What is not clear is whether the officer had completed the traffic stop before the subsequent frisk, seizure of the gun, and warrantless search of the vehicle. If

the traffic stop had been completed or abandoned before the gun was seized, then the police needed at least reasonable suspicion of ongoing criminal activity to continue to detain Appellant.

Here, it certainly is possible that the firearm was discovered in plain view before the officer's authority to detain Appellant in connection with the traffic stop ended. Nothing in the record speaks to whether the purpose of the traffic stop still was in progress or had concluded as may be evidenced by the issuance of a citation, the need to attend to any related safety concerns, *see Rodriguez*, *supra*, or as important, whether the purpose of the traffic stop had ended with Appellant free to leave before the officer continued with his investigation of possible drug crimes to conclude a second seizure had commenced that itself had to be supported by at least reasonable suspicion. *See Commonwealth v. Freeman,* 757 A.2d 903 (Pa. 2000); *Commonwealth v. Donaldson,* 786 A.2d 279 (Pa. Super. 2001). The trial court made no findings in these regards. If the purpose of the traffic stop had not concluded or not been abandoned when the gun was spotted in plain view, then clearly evidence of the gun should not be suppressed. If, on the other hand, the traffic stop had concluded or was abandoned when the gun was discovered, then suppression of the gun may depend upon whether the officer nonetheless, possessed reasonable suspicion to further investigate when the gun was discovered short of a warrantless search of the vehicle. *See Mattis*, *supra* (where purpose of initial traffic stop has ended and reasonable person

would not have believed he was free to leave, subsequent round of questioning by police is investigative detention or arrest; in absence of either reasonable suspicion to support investigative detention or probable cause to arrest, citizen is considered unlawfully detained and evidence must be suppressed).

The matter becomes more obscured because at the same time the officer was pursuing the motor vehicle violation, he also smelled the odor of fresh marijuana emanating from the vehicle. These two facts cannot be temporally separated. While the odor of fresh marijuana alone would not support a *warrantless search* of the vehicle, **see Barr**, **supra**, I believe that at the time of the stop the odor of marijuana, in combination with Appellant's physical attributes observed upon the stop, allowed the officer to investigate further by means of questioning or observation as to the presence of marijuana in and around the vehicle, short of conducting a warrantless search. It cannot be emphasized enough that a person cannot operate a motor vehicle while consuming marijuana, whether it be legal or not, since our motor vehicle laws prohibit the operation of a motor vehicle while impaired under a Schedule I substance, like marijuana, or even if not impaired, while metabolites of marijuana are present in the operator's blood. **See** 75 Pa.C.S.A. §§ 3802(d)(1)(i), (iii), and (2); **Commonwealth v. May**, 2022 PA Super 25, ____ A.3d____, 2022 WL 453581 (Pa. Super. 2022). I therefore believe it is permissible for an officer, in connection with a lawful vehicle stop, to briefly detain the occupants of an operating vehicle to investigate the odor of

marijuana emanating from the vehicle short of a warrantless search. The use of marijuana while operating a vehicle is a violation of our motor vehicle laws. The operation of the vehicle, in combination with the smell of marijuana emanating from the vehicle, provides enough articulable facts to support reasonable suspicion that crimes are or were committed to justify an investigatory detention. Naturally, if enough facts develop to support probable cause, then short of exigent circumstances, a warrant to search first must be obtained. *Barr*. To deny an officer the right however, to conduct an investigatory detention when marijuana is detected from an operating vehicle would be ludicrous. This would essentially dictate that an officer ignore the use of marijuana, a Schedule I substance, by the operator of a motor vehicle contrary to our laws and to public safety. Hence, when Officer Assad returned to Appellant still sitting in his vehicle after the officer conferred with his partner as to what to do next, I would conclude that not only did the officer have the right to request that Appellant step out of his vehicle, but he also had the right to continue or commence an investigatory detention with respect to Appellant's operation of the vehicle due to the odor of marijuana emanating from the vehicle and Appellant's physical demeanor.

As to the legality of the frisk, the present record does not contain findings that would support a frisk of Appellant when he was asked to exit his vehicle, since nothing in the record suggests that the officer possessed sufficient articulable facts to support a reasonable suspicion that Appellant

presented any danger to the officer. *See Terry*. However, nothing was seized as a result of the frisk and therefore, there is nothing to suppress or to reconsider in connection with this action. I believe the Majority's direction that upon remand the legality of the frisk be inquired into more particularly because of the impact that may have on the discovery of the gun to be unnecessary. Contrary to the Majority, I believe the frisk has little bearing on whether the gun could be seized. Even if the frisk is deemed to be illegal, the gun was not discovered in connection with a search of Appellant's person. It was discovered in plain view of the interior of the vehicle from where it was seized. In my view, the Majority's statement that if the frisk **and** the continued detention were not supported by reasonable suspicion, then the officer did not lawfully observe the gun in plain view, is in error. *See* Majority Memorandum, at 13. The search of Appellant's person and seizure of the gun are governed by different considerations.

The Majority does not distinguish between the constitutional considerations between a search and a seizure under the Fourth Amendment when focusing on the importance of the frisk as opposed to the seizure of the gun. In *Commonwealth v. McCree*, 924 A.2d 621 (Pa. 2007), the Court, citing *Horton v. California,* 496 U.S. 128 (1990), in discussing the plain view doctrine, stated, "[t]he 'plain view' doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable, but this characterization overlooks the important difference between searches

and seizures." ***McCree*** 924 A.2d at 627. A search under the Fourth Amendment compromises the individual interest in privacy, whereas, a seizure deprives the individual of dominion over his or her person or property. ***Id.*** Under the plain view doctrine,

> If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. A seizure of the article, however, would obviously invade the owner's possessory interest. If 'plain view' justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches.

***Id.***, citing ***Horton***, 496 U.S. at 133-34 (omitting citations). Because the seizure of the gun concerns Appellant's possessory interest, as opposed to his privacy interest when frisked, the question becomes whether the officer had the right to seize the gun observed in plain view regardless of his frisk of the Appellant. Assuming the officer had the right to continue to detain the Appellant, the focus must be on the considerations concerning the seizure of the gun, not the search of Appellant's person. If an article already is in plain view, neither its observation nor its seizure would involve any invasion of privacy. ***Horton,*** citing, ***Arizona v. Hicks***, 80 U.S. 321, 325 (1987). Appellant and the Majority do not make this distinction, but rather leap to the conclusion that if the frisk was illegal, then all other evidence gathered subsequent to the frisk must be suppressed. They also do so without considering whether the officer had the right to continue or conduct a further

investigatory detention, as explained above, when the gun was observed in plain view.

For a seizure to be valid under the plain view doctrine as an exception to the warrant requirement, three criteria must be met; (1) the police must be at a lawful vantage-point; (2) the incriminating character of the object must be immediately apparent; and (3) the police must have a lawful right of access to the object. *McCree.* As for the first criteria, it cannot be disputed the officer here saw the gun from a lawful vantage point, *i.e.*, he was on a public road. As for the second criteria, it is not clear whether the incriminating nature of the gun was immediately apparent when first viewed by the officer. The incriminating nature of an item is only immediately apparent if an officer believes the item is evidence of a crime or contraband. *United States v. Rodriguez,* 601 F.3d 402 (5th Cir. 2010). If the police lack probable cause without conducting a further search, then the incriminating nature of the item is not immediately apparent. *Id.* As will be explained, *infra*, an inability to satisfy this second criteria may not be dispositive on the question of the seizure in light of officer safety concerns. As to the third criteria, even though an object may be in plain view, an officer still must have the right to constitutionally cross a protected threshold, *i.e.,* the right to enter the place where the item is viewed. *McCree.* Here, the trial court did not discuss or make any findings regarding the plain view doctrine. It may need to do so

upon remand, but I believe a full consideration of that doctrine may be unnecessary.

At the moment the gun was spotted (assuming the continuation of a lawful investigatory detention) officer safety became paramount, as the gun could have been used by the remaining occupant of the vehicle to fatally harm the officers. This alone would have justified the lawful seizure of the gun when it was spotted in plain view. **See Commonwealth v. Clinton**, 905 A.2d 1026 (Pa. Super. 2006), *appeal denied,* 934 A.2d 71 (2007).

> The issue of officer safety should not be lightly regarded. Long ago, the United States Supreme Court recognized the issue of officer safety as a significant component in determining how to strike the proper balance between the rights of citizens to be free from unreasonable searches and seizures, and protecting the safety of our citizens and police officers:
>
> > We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.
> >
> > *In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest.*

*Id.* at 1031, citing *Terry,* 392 U.S. at 23-24 (footnote omitted and emphasis added in original).[3] In *Clinton*, during an investigatory traffic stop, the driver of a vehicle was asked if there were any weapons or anything else the officer should know about prior to the driver rooting through the vehicle's glove compartment in search of registration and insurance information. The Court held that law enforcement officials may inquire about the presence of weapons during a lawful traffic stop as this reasonably furthered the interest in officer safety and constituted a tolerable and minimal intrusion upon a citizen's rights. *Id.* at 1031. Thus, the Court held that it was error for the suppression court to conclude that a police officer's question, posed during a traffic stop prior to permitting a driver to search the vehicle's closed compartments presumably, but not necessarily, for papers, was "coercive"[4] simply because its subject was the existence of weapons or anything else of which the police had a legitimate reason to be aware. By extension, I would conclude that if the police have the right to inquire about the presence of a weapon during a traffic stop without probable cause to believe any weapons are in the vehicle, then

---

[3] As noted by the Third Circuit, the Supreme Court has repeatedly recognized that traffic stops are dangerous encounters that result in assaults and murders of police officers and that the risk of danger to a police officer conducting a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. *United States v. Moorefield,* 111 F.3d 10, 13 (3d Cir. 1997), citing cases.

[4] It was the defendant's position that police failed to provide *Miranda* warnings to him before asking about weapons or anything else.

certainly, they possess the right to seize and secure a weapon in the interests of officer safety where the weapon is seized from plain view inside the vehicle, even if the incriminating nature of the gun is not immediately apparent. Once a gun is lawfully seized in the interests of officer safety the question then becomes whether the officers had the right to determine if Appellant could lawfully possess the gun. I would conclude that they did, since a subsequent search of a database to determine legality of gun ownership did not require any further search or seizure of Appellant or his property. **See United States v. Watts,** 7 F.3d 122, 127 (8th Cir. 1993), *cert. denied*, 510 U.S. 1078 (1994) (investigating serial numbers on weapons that lawfully have come into possession of investigators does not constitute a search or seizure under the Fourth Amendment); **United States v. Wallace,** 889 F.2d 580, 583 (5th Cir. 1989), *cert. denied,* 497 U.S. 1006 (1990) (when police have legally come into possession of a gun they are entitled, if not expected, to note and record serial numbers).

I also find it unnecessary to order a remand as requested by the trial court to reconsider its suppression ruling under **Alexander** and **Gary** to address whether the smell alone of marijuana could support the subsequent search of the vehicle and seizure of the gun. Those cases involved the suppression of evidence seized during the *warrantless search* of a vehicle where the only justification for the search was the odor of marijuana. The separate issue of an investigatory detention based upon reasonable suspicion

- 14 -

was not before the Court. This is an extremely important distinction because absent some exception, police are not entitled to conduct a warrantless search of a vehicle, whereas in an investigatory detention, the police are free to inquire and observe without the need to secure a warrant.

*Alexander* overruled ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014), and returned Pennsylvania to its pre-***Gary*** state under which *warrantless vehicle searches* require both probable cause and exigent circumstances. In ***Barr***, our Supreme Court held that in light of the enactment of the Medical Marijuana Act ("MMA"), under which marijuana no longer is *per se* illegal in this Commonwealth, the odor of marijuana alone is insufficient to establish probable cause to *search* but may be considered a factor in a probable cause analysis. ***Barr*** also recognized that the possession of marijuana still is illegal for those not qualified under the MMA. To the extent the trial court wants to consider these cases with respect to the drug evidence seized without a warrant, the issue is moot. Appellant was not tried or convicted of any drug related charges. Likewise, seizure of the gun was not the result of a warrantless search, but rather the product of a plain view thus, in my opinion, making any consideration of ***Alexander*** *or* ***Barr*** largely unnecessary to determine the legality of the gun seizure.

Finally, although mentioned and preserved, Appellant does not discuss separately in any detail the issue of suppression with respect to any statements made by Appellant to police. Based upon the legal theories

advanced by Appellant, it appears to be Appellant's belief that this evidence also must be suppressed as a result of the illegal frisk and investigatory detention done without reasonable suspicion. Once again, the trial court has not provided any findings or discussion on this issue. Upon remand, I believe it would be incumbent for the parties and the court to consider the admissibility of any statements in light of whether they were made in connection with the traffic stop, or as part of another lawful investigatory detention.

Accordingly, while I concur in the Majority's decision to remand this matter for further consideration, I respectfully dissent as to how the issues of suppression should be addressed.