J-S07040-21

2021 PA Super 83

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANDREW JORDAN MATTIS | : | |
| | : | |
| Appellant | : | No. 856 WDA 2020 |

Appeal from the Judgment of Sentence Entered July 27, 2020
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0001602-2018

BEFORE: SHOGAN, J., DUBOW, J., and KING, J.

OPINION BY KING, J.:                                    **FILED: APRIL 30, 2021**

Appellant, Andrew Jordan Mattis, appeals from the judgment of sentence entered in the Fayette County Court of Common Pleas, following his stipulated bench trial convictions for possession of marijuana (small amount personal use), use/possession of drug paraphernalia, and maximum speed limits.[1]  We vacate the judgment of sentence and remand for further proceedings.

The relevant facts of this case as set forth in the affidavit of probable cause are as follows:

> On 5/07/18 while conducting traffic enforcement on SR 1119 Northbound in the area of the North Gallatin entrance ramp, [Trooper Spangler] was in full uniform in a [m]arked Pennsylvania State Police Patrol Unit, B4-25. [Trooper Spangler] was utilizing Radar Unit #GHD17713. [Trooper Spangler] then observed a gray colored Volkswagen Sedan

---

[1] 35 P.S. §§ 780-113(a)(31)(i), (32); and 75 Pa.C.S.A. § 3362(a)(2), respectively.

enter [the trooper's] field of [vision] traveling at a speed of 76mph in a posted 55mph zone.

[Trooper Spangler] caught up to the vehicle and identified it as a [g]ray Volkswagen Jetta bearing PA registration […]. [Trooper Spangler] then activated [his] emergency lights and initiated a traffic stop on that same vehicle near the Connellsville St., exit ramp. After speaking with the operator of the vehicle, [Trooper Spangler] could identify him by his valid PA [operator license number] and [d]river's license as [Appellant]. [Trooper Spangler] observed the operator of the vehicle to be extraordinarily nervous and fidgeting constantly.

[Trooper Spangler] then requested [Appellant] to exit his vehicle and speak with [Trooper Spangler] outside the vehicle. [Trooper Spangler] asked [Appellant] for consent to search his vehicle and [Appellant] granted permission. [Trooper Spangler] then advised [Appellant] that he did not have to let [Trooper Spangler] search if [Appellant] did not want [Trooper Spangler] to. [Appellant] again granted [Trooper Spangler] permission to search his vehicle. Trooper Russo was on scene and assisted with the traffic stop.

During the search of the vehicle, a dark colored glass smoking pipe with residue was found in the front driver side door of the vehicle. Also found in the back seat of the vehicle was a small amount of suspected marijuana inside of a Surefresh plastic bag, a [m]ulti-colored glass pipe with green eye and residue, a metal grinder with a multi-colored sticker and residue, and a Pro-Scale Three Weight with residue.

\* \* \*

(Affidavit of Probable Cause, 5/21/18, at 1). The Commonwealth subsequently charged Appellant with traffic and drug offenses.

On November 9, 2018, Appellant filed a suppression motion. The court held a suppression hearing on December 4, 2018, and denied relief on March 22, 2019. On April 4, 2020, Appellant proceeded to a bench trial, during which Appellant stipulated to the factual basis set forth in the affidavit of probable

cause. The court convicted Appellant that day of the above-mentioned crimes. On July 27, 2020, the court sentenced Appellant to six months' probation plus fines and costs. Appellant timely filed a notice of appeal on August 13, 2020. On August 17, 2020, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied on August 31, 2020.

Appellant raises the following claim for our review:

> Did the trial court err as a matter of law in denying Appellant's omnibus pretrial motion to suppress evidence by not suppressing the marijuana and drug paraphernalia in question when the Trooper prolonged the traffic [stop] beyond its original mission, giving rise to a second investigative detention of Appellant? A) Was the Trooper required to have articulable reasonable suspicion to prolong the traffic stop and ask for consent to search and/or conduct a search of Appellant's vehicle[?] B) Did the Trooper have reasonable suspicion to prolong the traffic stop and ask for consent to search and/or conduct a search of Appellant's vehicle when he observed Appellant to be "extraordinarily nervous," "nervous" or "fidgeting"?

(Appellant's Brief at 5-6).

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Williams*, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (internal citations omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the

> suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Id.* at 27. The reviewing court's scope of review is limited to the evidentiary record of the pre-trial hearing on the suppression motion. *In re L.J.*, 622 Pa. 126, 79 A.3d 1073 (2013). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa.Super. 2019) (quoting *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa.Super. 2013)). If appellate review of the suppression court's decision "turns on allegations of legal error," then the trial court's legal conclusions are nonbinding on appeal and subject to plenary review. *Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa.Super. 2017) (quoting *Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015), *appeal denied*, 635 Pa. 750, 135 A.3d 584 (2016)).

For purposes of disposition, we combine Appellant's sub-issues as they are related to Appellant's claim that his consent to search was not voluntary under the circumstances.[2] Appellant argues that a traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a traffic citation, unless the stop is independently

---

[2] Appellant concedes that he was lawfully stopped for a speeding violation. (Appellant's Brief at 19). Thus, Appellant does not challenge the validity of the initial stop.

supported by reasonable suspicion. Appellant insists that when Trooper Spangler directed him to exit the car, questioned him about its contents, and asked Appellant for consent to search, that a "new interaction" between Appellant and the trooper began. At that point, Appellant asserts he was seized for a purpose beyond the original speeding violation. Appellant contends that this prolonged detention was not supported by reasonable suspicion. Appellant maintains his "extremely nervous" and "fidgeting" behaviors did not rise to the level of reasonable suspicion required under the law. Appellant claims the "new interaction" was not constitutionally valid, rendered his consent to search involuntary, and any evidence discovered as a product of the search should have been suppressed. For the following reasons, we agree with Appellant's contentions.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from "unreasonable searches and seizures, including those entailing only a brief detention." *Commonwealth v. Strickler*, 563 Pa. 47, 56, 757 A.2d 884, 888 (2000). Specifically, police officers may not conduct a warrantless search or seizure unless one of several recognized exceptions applies. *Commonwealth v. Blair*, 575 A.2d 593, 596 (Pa.Super. 1990). One such exception is a search conducted pursuant to consent voluntarily given. *Id.* at 597. The Fourth Amendment analysis in consent cases entails a two-prong assessment: first, the constitutional validity of the citizen/police encounter giving rise to the

consent and, second, the voluntariness of said consent. *See Strickler, supra* at 56, 757 A.2d at 888. Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus. *Id.* at 57, 757 A.2d at 889. If a defendant's detention violates the Fourth Amendment, then any evidence seized during that stop must be excluded as fruit of an unlawful detention. *Id.*

"Where the purpose of an initial, valid traffic stop has ended and a reasonable person would have believed that he was free to leave, the law characterizes a subsequent round of questioning by the officer as a mere encounter." *Commonwealth v. By*, 812 A.2d 1250, 1255 (Pa.Super. 2002), *appeal denied*, 576 Pa. 710, 839 A.2d 350 (2003). Since the citizen is free to leave, he is not detained, and the police are free to ask questions appropriate to a mere encounter, including a request for permission to search the vehicle. *See Commonwealth v. Freeman*, 563 Pa. 82, 89, 757 A.2d 903, 907 (2000). Nevertheless, where the purpose of an initial traffic stop has ended and a reasonable person would not have believed that he was free to leave, the law characterizes a subsequent round of questioning by the police as an investigative detention or arrest. *Id.* at 90, 757 A.2d at 907. In the absence of either reasonable suspicion to support the investigative detention or probable cause to support the arrest, the citizen is considered unlawfully detained. *See Strickler, supra* at 58, 757 A.2d at 889. Where a consensual search has been preceded by an unlawful detention, the exclusionary rule

requires suppression of the evidence. *Id.*

Our Supreme Court has expressly recognized that an officer conducting a valid traffic stop may order the occupants of a vehicle to alight to assure his own safety. *See Freeman, supra* at 89, 757 A.2d at 907 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) and *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997)). Once the primary traffic stop has concluded, however, the officer's authority to order either the driver or occupant from the car is extinguished. *Commonwealth v. Sierra*, 555 Pa. 170, 723 A.2d 644 (1999) (plurality). Thus, if the officer directs or requests the occupants to exit the vehicle after resolution of the reason for the initial stop, the officer's show of authority may constitute an investigatory detention subject to a renewed showing of reasonable suspicion. *See Commonwealth v. Donaldson*, 786 A.2d 279 (Pa.Super. 2001) (concluding that officer's "request" for driver to exit vehicle following conclusion of initial traffic stop could not be viewed as discretionary and constituted investigatory detention). Significantly, absent more, a police officer's assessment that the occupants of a vehicle appear nervous does not provide reasonable suspicion for an investigative detention. *Commonwealth v. DeHart*, 745 A.2d 633 (Pa.Super. 2000).

In *Commonwealth v. Lopez*, 609 A.2d 177 (Pa.Super. 1992), *appeal denied*, 533 Pa. 598, 617 A.2d 1273 (1992), this Court addressed a similar situation in which a police officer conducted a valid initial traffic stop. After

stopping Lopez for a traffic violation, the officer requested Lopez's registration, rental car agreement and license. Before returning those documents, the officer continued to question Lopez regarding his origin, destination, purpose and duration of his trip, and eventually asked for Lopez's consent to search. This Court held that the officer's "continued detention and investigation" constituted an unreasonable Fourth Amendment seizure. *Id.* Specifically, this Court concluded that the illegality resulted from the officer's retention of Lopez's license and other papers because while police held those documents, Lopez was not free to leave. *Id.* Consequently, Lopez's consent to search was not lawful. *Id.* This Court held that the evidence was illegally seized, and it reversed and remanded the case for further proceedings. *Id.*

Instantly, at the suppression hearing, the trooper testified that after stopping Appellant's vehicle for speeding, he made contact with Appellant and noticed Appellant was "extraordinarily nervous," and "seemed to be fidgeting around a lot inside the vehicle." (N.T. Suppression Hearing, 12/4/18, at 4). The trooper explained that "extraordinary" meant that Appellant was "shaking and kind of like, when [the trooper was] trying to make contact with somebody and speak to somebody, they typically look you in the eye constantly and speak to you strongly and firmly, and it seemed as if [Appellant] was not speaking to [the trooper] in a typical manner." (*Id.* at 10).

The trooper requested Appellant's license and registration to confirm that Appellant did not have any active warrants for his arrest. (*Id.* at 5).

After confirming that no warrants existed, the trooper observed Appellant acting "continually nervous." (*Id.*) Because of Appellant's nervous behavior, the trooper asked Appellant to exit and proceed to the rear of his vehicle, "to figure out why [Appellant] was so nervous at the time of the stop." (*Id.*) Once outside of his vehicle, the trooper asked Appellant if he had anything illegal inside the vehicle. (*Id.* at 10). While retaining possession of Appellant's license and registration, the trooper asked Appellant for consent to search his vehicle, and Appellant gave consent. (*Id.*) After receiving consent, the trooper informed Appellant that he did not have to give consent if he did not want to do so. (*Id.*) Once again, the trooper asked Appellant for consent, and Appellant consented. (*Id.*) Importantly, the trooper acknowledged that when he requested Appellant's consent to search his vehicle both times, the trooper retained possession of Appellant's driver's license and registration. (*Id.* at 13). Further, the trooper admitted that at the time he requested Appellant's consent to search, Appellant was not free to leave. (*Id.* at 13-14).

Under these circumstances, we cannot agree with the suppression court's decision that Appellant's consent was lawful. The trooper testified that he asked Appellant to exit his vehicle in an attempt to discover the cause of Appellant's nervous behavior. (*Id.* at 13). The trooper did not make this request in furtherance of his investigation for the speeding violation. Rather, the trooper sought to obtain additional information unrelated to the initial

traffic stop. Significantly, once the primary purpose of the initial stop for the speeding violation ended, the trooper's authority to order Appellant to exit his car had extinguished. *See Sierra, supra*. Thus, the trooper's request for Appellant to exit his vehicle constituted an investigatory detention, requiring reasonable suspicion. *See Donaldson, supra*. Appellant's nervous behavior alone did not provide a sufficient basis to warrant an investigatory detention. *See DeHart, supra*. Further, the trooper acknowledged that once Appellant exited his vehicle, he was not free to leave. (*See* N.T. Suppression Hearing, 12/4/18, at 13). The fact that the trooper retained possession of Appellant's driver's license and registration during each request for consent confirms that Appellant was actually not free to leave. *See Freeman, supra*. Therefore, Appellant's consent to search was not constitutionally valid on these facts. *See Lopez, supra*. Accordingly, we vacate Appellant's judgment of sentence and remand this case for a new trial at which the Commonwealth will not be permitted to introduce the illegally seized evidence. *See id.*

Judgment of sentence vacated; case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/2021

- 10 -