J-A26037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HENRY JOHNSON | : | |
| | : | |
| Appellant | : | No. 1907 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 9, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003591-2019

BEFORE: BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED JUNE 8, 2022**

Henry Johnson (Appellant) appeals from the judgment of sentence imposed in the Philadelphia County Court of Common Pleas following his non-jury conviction of persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.[1] Appellant contends the trial court erred in denying his pretrial motion to suppress evidence and statements when: (1) the police lacked reasonable suspicion to detain him following a traffic stop; (2) the police unlawfully seized evidence absent a warrant, or probable cause and exigent circumstances; (3) the police unlawfully searched his vehicle; and (4) the Commonwealth failed to prove statements he made were lawfully obtained. For the reasons below, we vacate the judgment of sentence, and remand for further proceedings.

---

[1] *See* 18 Pa.C.S. §§ 6105(a)(1), 6016(a)(1), and 6108, respectively.

The relevant facts, developed during Appellant's pretrial suppression hearing, are as follows. At approximately 8:50 p.m. on May 3, 2019, Philadelphia Police officer Nabil Assad and his partner[2] were on duty in the 500 block of 59th Street in Philadelphia when they observed a vehicle traveling "with a driver's side headlight out and the high-beams on[.]" N.T. Suppression H'rg, 10/10/19, at 9-10. They stopped the vehicle in an area Officer Assad described as "violent." *Id.* at 10, 12. There were two occupants — the driver, later identified as Appellant, and a female passenger. *See id.* at 10.

Officer Assad described what happened when he approached Appellant's vehicle:

> I approached the driver and asked him for his license, registration, and insurance. When he handed me over his driver's license, I could see his chest was rising in and out. He was breathing at a rapid pace, his hands were shaking when he handed me over his driver's license, and there was an odor of [fresh] marijuana coming from the vehicle.

N.T., Suppression H'rg, at 10. At that point, the officer "went back" to talk to his partner "[a]bout his observation and what [they] were going to do next." *Id.* at 14-15. Officer Assad testified:

> I then had [Appellant] step out [of the vehicle]. I patted him down for weapons; didn't find any. I then had him step back with my partner. And as soon as I looked down at the vehicle, on the driver floorboard there was a black-and-purple handgun.

*Id.* at 10. The officer stated the gun was observed "out in the open" by where the driver's right foot would be located. *Id.* at 11. Officer Assad "recovered

_____

[2] The name of Officer Assad's partner is not revealed in the record.

the gun and . . . had the passenger step out." *Id.* He then searched the vehicle and recovered a "clear gray pill bottle . . . in the center console with marijuana residue." *Id.* There was also a small amount of marijuana in the passenger's purse, which Appellant claimed was his. *Id.* at 11-12. Officer Assad acknowledged he did not ask Appellant about the marijuana odor before directing him to step out of the vehicle and frisking him. *Id.* at 15.

Appellant was subsequently arrested and charged with the three firearms offenses and possession of a small amount of marijuana;[3] however, the marijuana charge was later dismissed. On July 2, 2019, Appellant filed an omnibus pretrial motion seeking to suppress evidence obtained as a result of an illegal frisk and arrest, and a warrantless search. *See* Appellant's Omnibus Motion, 7/2/19, at 1 (unpaginated). He filed a supplemental motion on the morning of his scheduled suppression hearing — October 10, 2019 — in which he argued the warrantless search of his vehicle, absent exigent circumstances, violated the Pennsylvania Constitution, and "[t]he statement [he] gave to a detective after the unlawful search of his car should be suppressed as fruit of the poisonous tree." *See* Appellant's Supplementary Motion to Suppress Physical Evidence and Statement, 10/10/19, at 1, 3.

Prior to the start of the hearing, the Commonwealth's attorney acknowledged that she had received the supplemental motion from Appellant that morning, but that "it should not change [her] argument." N.T.,

---

[3] 35 P.S. § 780-113(a)(31).

- 3 -

Suppression H'rg, at 4. Appellant's counsel explained to the trial court that his argument involved a "relatively recent development" since the Pennsylvania Supreme Court had recently granted a petition for allowance of appeal in **Commonwealth v. Alexander**, 3246 EDA 2017 (unpub. memo.) (Pa. Super. Mar. 5, 2019).[4] **See** N.T., Suppression H'rg, at 7.

The only witness who testified at the suppression hearing was Officer Assad. Following his testimony, Appellant's counsel conceded "the validity of the car stop[ because there was] no dispute that the headlight was out[,]" and that the officer had the authority to ask Appellant "to step out of the car." N.T., Suppression H'rg, at 18-19. However, Appellant was contesting the legality of the frisk — since there was no evidence Appellant was armed and dangerous — and the propriety of the vehicle search. The trial court denied the suppression motion that same day.

On March 2, 2020, Appellant filed a motion requesting the court reopen the record and reconsider the denial of his suppression motion. Appellant sought to present evidence regarding the number of medical marijuana cardholders in Pennsylvania and that fact that medical marijuana may be in

---

[4] As we will discuss **infra**, the Supreme Court's subsequent decision in **Alexander** changed the landscape of warrantless vehicle searches in Pennsylvania. **See Commonwealth v. Alexander**, 243 A.3d 177, 207 (Pa. 2020) (holding that, under the Pennsylvania Constitution, **warrantless vehicle searches require both probable cause and exigent circumstances**; 'one without the other is insufficient'") (citation omitted and emphasis added).

- 4 -

dry leaf form.[5] *See* Appellant's Motion to Reopen the Presentation of Evidence and to Reconsider the Denial of Motion to Suppress, 3/2/20, at 3. Appellant also argued that the Pennsylvania Supreme Court's May 2019 decision in *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019) — which held that possession of a concealed firearm does not itself create reasonable suspicion that an individual may be dangerous — applied, with equal force, to the possession of marijuana.[6] *See* Appellant's Motion to Reopen the Presentation of Evidence and to Reconsider the Denial of Motion to Suppress at 3-4.

The trial court heard argument on Appellant's motion prior to the start of his criminal trial on March 4, 2020. The court granted the motion to reopen the record, and permitted Appellant to present evidence, by way of a stipulated exhibit, of the number of active medical marijuana cards in Pennsylvania during the relevant time periods. *See* N.T., Trial, 3/4/20, at 11. However, the court denied the motion to reconsider its suppression ruling. *Id.* at 11-12.

---

[5] By way of background, at the suppression hearing, Appellant's counsel argued to the court that although Officer Assad testified he detected an odor of marijuana, "marijuana at this point is sort of proliferating as a medicinal substitute." N.T., Suppression H'rg, at 21. We note that Appellant's suppression hearing was conducted before the Supreme Court's decision in *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021), which we will discuss *infra*. The court responded that it did not believe "**fresh** marijuana [was] sold in" medical marijuana dispensaries. N.T., Suppression H'rg, at 22 (emphasis added). Thus, Appellant intended to present evidence to dispute the court's belief.

[6] *Hicks* was decided **prior** to Appellant's suppression hearing.

Appellant proceeded immediately to a stipulated non-jury trial, where the court found him guilty of all charges. On September 9, 2020, he was sentenced to three concurrent terms of two to four years' imprisonment, followed by two years' probation. This timely appeal followed. Thereafter, Appellant complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. In response, the trial court issued an opinion requesting that we vacate the judgment of sentence and remand for reconsideration in light of two recent decisions — *Alexander*, *supra*, and *Commonwealth v. Barr*, 240 A.3d 1263 (Pa. Super. 2020)[7] — which set "new legal standards" for evaluating the propriety of a vehicle search based on the odor of marijuana. *See* Trial Ct. Op., 2/4/21, at 5-6.

Appellant raises the following claims for our review:

A. Did not the lower court err in denying suppression of physical evidence and statements where Appellant was the subject of an investigative detention, the police lacked even reasonable

---

[7] Although the trial court relied on **this Court's** opinion in *Barr*, that decision was subsequently vacated by the Pennsylvania Supreme Court. *See Barr*, 266 A.3d at 44. Nevertheless, the Supreme Court agreed with this Court's determination that "the odor of marijuana alone does not amount to probable cause to conduct a warrantless search of a vehicle but, rather, may be considered as a factor in examining the totality of the circumstances." *Id.* Its decision to vacate this Court's opinion was based on the fact that we remanded the case to the trial court to consider whether there were other factors — in addition to the odor of marijuana — supporting probable cause. *See id.* The Supreme Court determined that, because "the record supported[ed] the trial court's conclusion that the troopers searched the car in question based **solely** on the odor of marijuana coming from it[,]" a remand was unwarranted. *Id.* (emphasis added).

suspicion to detain Appellant, and all evidence subsequently obtained was fruit of the poisonous tree?

B. Did not the lower court err in denying suppression of physical evidence that was seized without a search warrant and in the absence of probable cause and exigent circumstances?

C. Did not the lower court err in denying suppression of physical evidence where the police unlawfully searched Appellant's car?

D. Did not the lower court err in denying suppression of Appellant's statement where the Commonwealth failed to prove that the statements were lawfully obtained?

Appellant's Brief at 3.

Our review of a trial court's order denying a pretrial motion to suppress is guided by the following:

> [O]ur standard of review . . . is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (citations and footnote omitted).

Because all of Appellant's claims challenging the denial of his suppression motion are interrelated, we will consider them together. Appellant first argues he was subject to an investigative detention absent reasonable suspicion that criminal activity was afoot. Appellant's Brief at 13-14. Although he does not contest the legitimacy of the initial traffic stop, or

the authority of the police to order him out of the vehicle while investigating the traffic violation, *see* N.T., Suppression H'rg, at 18-19, Appellant contends that he was frisked absent specific and articulable facts that he was armed and dangerous. *See* Appellant's Brief at 20-21. Moreover, he insists the officers then continued to detain him without reasonable suspicion. Appellant's Brief at 14.

Appellant argues the odor of marijuana, itself, does not support a presumption of criminality since the passage of the Medical Marijuana Act (MMA).[8] *See* 35 P.S. §§ 10231.101-10231.2110; *see also* Appellant's Brief at 14-15. Further, he contends the other potential bases for his detention — his nervous demeanor and the fact the stop occurred in a "violent" area — did not supply the requisite reasonable suspicion. *See id.* at 16-18. Thus, he asserts the physical evidence and his statements obtained following the frisk should be suppressed as fruit of the poisonous tree. *Id.* at 22.

Appellant also insists that the seizure of the gun was not permissible under the plain view doctrine. Appellant's Brief at 25. Appellant argues that "[b]ut for [Officer Assad's] unlawful frisk and seizure . . ., the officer would not have been in a position to see the firearm." *Id.* at 26. Moreover, based upon *Hicks*, Appellant asserts that the "incriminating character of the gun was not immediately apparent, so as to justify its seizure." *Id.* at 26.

---

[8] Appellant, like the trial court, relies on **this Court's** decision in *Barr*. We will discuss only the Supreme Court's subsequent ruling in our analysis.

With regard to the subsequent vehicle search, Appellant contends the search was unlawful pursuant to *Alexander*, which held that an officer must possess both probable cause **and** exigent circumstances to conduct a warrantless search of a vehicle. Appellant's Brief at 29. He contends both "of these things were lacking here." *Id.*

Lastly, he notes that, at his stipulated trial, the court permitted the Commonwealth to introduce a statement he made "in which he allegedly admitted to possession of the gun." Appellant's Brief at 30. However, he claims the Commonwealth presented "no testimony whatsoever regarding this alleged statement" during the suppression hearing, and, thus, "failed to prove that the statement was lawfully obtained" in accordance with the dictates of *Miranda*.[9] *Id.* at 30-31.

In response to Appellant's arguments, the Commonwealth insists Appellant is attempting to "complicate this straightforward case[.]" Commonwealth's Brief at 12. It summarizes:

> This is a case in which a police officer lawfully stopped a car for a Vehicle Code violation at night and in a violent area. During the traffic stop, the driver was very nervous, and the officer saw a gun lying "out in the open" on the floor of the vehicle and within reach of one of the car's occupants. The officer seized the weapon, and given that he had an objectively reasonable basis to fear for his safety, that seizure was justified.

*Id.*

---

[9] *Miranda v. Arizona*, 384 U.S.436 (1966).

The Commonwealth downplays the significance of both the frisk and the vehicle search — noting no evidence was recovered "as a result of the frisk" and "the sole drug charge was dismissed prior to trial."  Commonwealth's Brief at 20, 30.  However, the Commonwealth contends Officer Assad was justified in seizing the firearm he observed in plain view.  *Id.* at 20.  It emphasizes that during the traffic stop, the officer had the authority to order Appellant "out of the vehicle and to direct him to stand where his partner was."  *Id.* at 21.  Consequently, the Commonwealth maintains Officer Assad had the right to be in the position where he was when he saw the firearm in plain view.  *Id.* Once that occurred, he could seize the weapon because it posed a danger to him and his partner.  *Id.* at 22.

Finally, with regard to Appellant's statements, the Commonwealth asserts (1) the statements were not "fruit of the poisonous tree" since Officer Assad did not act unlawfully, and (2) Appellant waived his *Miranda* challenge because he did not include it in either his original or supplemental pretrial motion.  Commonwealth's Brief at 31-32.  Accordingly, the Commonwealth contends the trial court properly denied Appellant's suppression motion, and we should affirm the judgment of sentence.

Upon our review, we conclude the Commonwealth's summary of the "facts" is far too simplistic and overlooks key details.  Moreover, we agree with the trial court that the Supreme Court's recent decisions in *Alexander* and *Barr* have changed the landscape of traffic stops during which an officer detects an odor of marijuana.  *See* Trial Ct. Op. at 4-5.

In **Alexander**, the Supreme Court reconsidered its 2014 plurality decision in **Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014), which had adopted the federal automobile exception to the warrant requirement, and held that the only prerequisite to a warrantless vehicle search was probable cause. **See Gary**, 91 A.3d at 138 ("[N]o exigency beyond the inherent mobility of a motor vehicle is required."). The **Alexander** Court, however, reversed course — and overruled **Gary** — based upon the "greater protection" afforded to Pennsylvania citizens under our Constitution. **Alexander**, 243 A.3d at 181. The Court held:

> As a result of today's decision, we return to the pre-**Gary** application of our limited automobile exception under Article I, Section 8 of our Constitution, pursuant to which warrantless vehicle searches require both probable cause and exigent circumstances; one without the other is insufficient.

**Id.** at 207 (citation and quotation marks omitted).

In **Barr**, the Supreme Court considered "to what extent, if at all, the smell of marijuana can be considered when determining whether law enforcement had probable cause to conduct a warrantless search of a vehicle" in light of the enactment of the MMA. **Barr**, 266 A.3d. at 28. The Court explained that although "the MMA makes abundantly clear that marijuana no longer is *per se* illegal in this Commonwealth[,]" the possession of marijuana is still illegal under the Controlled Substance, Drug, Device and Cosmetic Act[10] "for those not qualified under the MMA." **Id.** at 41. Accordingly, the Supreme

---

[10] 35 P.S. §§ 780.101 *et seq*.

- 11 -

Court held that "the odor of marijuana may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search." *Id.* In reaching this conclusion, the Court relied upon its decision in *Hicks*, wherein it held that an individual's mere possession of a concealed firearm — absent any information that the individual was not permitted to carry a firearm or that the individual intended to use the firearm for criminal activity — did not supply the requisite reasonable suspicion to justify a *Terry*[11] stop and frisk. *Id.* at 43. The *Barr* Court summarized:

> Applying such jurisprudence to the facts presented, we conclude that if lawful possession of an item due to legislative authorization to possess it cannot, in and of itself, permit an officer to infer criminal activity for purposes of effectuating a *Terry* stop, lawful possession of an item pursuant to legislative authorization is alone insufficient to satisfy the more stringent requirement of probable cause of criminal activity required to conduct a warrantless search of a vehicle.

*Id.*

We agree with the trial court that the "new legal standards in *Barr* and *Alexander* are retroactively applicable in this case." Trial Ct. Op. at 5. Both decisions were filed while Appellant's case was pending on direct appeal, and Appellant preserved these challenges in the trial court. *See Commonwealth v. Cabeza*, 469 A.2d 146, 148 (Pa. 1983) ("[W]here an appellate decision overrules prior law and announces a new principle, unless the decision

[11] *Terry v. Ohio*, 392 U.S. 1 (1968).

- 12 -

specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.").

**Barr**, in particular, is applicable to the case *sub judice*. Here, the Commonwealth focuses on the legality of the traffic stop and the officers' authority to order Appellant out of the car during the stop. **See** Commonwealth's Brief at 21. Moreover, it emphasizes Appellant's nervous demeanor, and that fact the stop occurred in "an area that was known for its violence." **Id.** at 27. The Commonwealth then summarily states: "[W]hen the officer directed [Appellant] to get out of the car, as he was entitled to do, he discovered that a handgun was lying on the floor of the car 'out in the open' right where [Appellant's] feet had been." **Id.**

The Commonwealth all but ignores the fact that the odor of marijuana precipitated Officer Assad's decision to order Appellant out of the car **and** frisk him. According to the officer's testimony at the suppression hearing, he did not observe the gun until **after** the frisk — which revealed no contraband or weapons — and **after** he continued to detain Appellant by directing him to move away from the car and towards his partner. **See** N.T., Suppression H'rg, at 10. Thus, if the frisk and continued detention were not supported by reasonable suspicion, then, as Appellant argues, the officer did not lawfully observe the gun in plain view. **See Commonwealth v. Heidelberg**, ___ A.3d ___, ___, 2021 WL 5458398, *8 (Pa. Super. Nov. 23, 2021) ("The plain-view doctrine permits the warrantless seizure of an object when: (1) **an**

**officer views the object from a lawful vantage point**; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object.") (citation omitted and emphasis added).

Here, the trial court explicitly stated in its opinion that the **only factor** it considered in determining whether Officer Assad had probable cause for the search of Appellant's vehicle was the smell of marijuana. Trial Ct. Op. at 5. The court "did not . . . evaluate any other factors in conjunction with the odor of marijuana in its probable cause analysis." *Id.* (citation and quotation marks omitted). This is impermissible under *Barr*. Thus, we agree that we are compelled to remand for reconsideration under the new standard.[12]

We note, too, that upon remand, the trial court should also consider the underlying basis for Officer Assad's frisk and subsequent detention of Appellant — for it was only **after** these acts that the officer observed the gun in plain view. As explained *supra*, the Commonwealth ignores these crucial factual determinations and argues that Officer Assad had the authority not

---

[12] Should the trial court determine the frisk and continued detention was proper, it should then consider whether *Alexander* impacts the officer's subsequent search of the vehicle. *See Commonwealth v. Lutz*, ___ A.3d ___, ___, 2022 WL 433446, *5 (Pa. Super. Feb. 14, 2022) (officer properly seized marijuana pipe in plain view in car without warrant; "the still-running vehicle and open car door fulfilled the requirement of exigent circumstances because the [officer] needed to enter the car to turn off the ignition[,]" and once he did so, "he had lawful access to the pipe sitting on the driver's seat and seizure of it was lawful under the plain view doctrine, as informed by *Alexander*")

only to order Appellant out of the car, but also to "control all movement in [the] traffic encounter[.]" Commonwealth's Brief at 18, *citing Commonwealth v. Wright*, 224 A.3d 1104 (Pa. Super. 2019), *appeal denied*, 237 A.3d 393 (Pa. 2020). Therefore, it maintains, "he was entitled to have [Appellant] move back to where his partner was while he took the actions necessary to complete the traffic stop." *Id.*

However, the reason Officer Assad frisked Appellant, and then continued to detain him, is an important consideration. As the Supreme Court reinforced in *Hicks*, "to proceed from a [lawful investigatory] stop to a frisk, the police officer must **reasonably suspect** that the person stopped is **armed and dangerous**." *Hicks*, 208 A.3d at 921 (citation omitted and emphasis added). In the present case, the trial court did not state whether this prerequisite was satisfied.

With regard to Appellant's continued detention after the frisk, this Court has recently explained:

> [W]here the purpose of an initial traffic stop has ended and a reasonable person would not have believed that he was free to leave, the law characterizes a subsequent round of questioning by the police as an investigative detention or arrest. In the absence of either reasonable suspicion or probable cause to support the arrest, the citizen is considered unlawfully detained. . . .
>
> Our Supreme Court has expressly recognized that an officer conducting a valid traffic stop may order the occupants of a vehicle to alight to assure his own safety. Once the primary traffic stop has concluded, however, the officer's authority to order either the driver or occupant from the car is extinguished. Thus, if the officer directs or requests the occupants to exit the vehicle after resolution of the reason for the initial stop, the officer's show of authority may constitute an investigatory detention subject to a

- 15 -

renewed showing of reasonable suspicion. Significantly, absent more, a police officer's assessment that the occupants of a vehicle appear nervous does not provide reasonable suspicion for an investigative detention.

*Commonwealth v. Mattis*, 252 A.3d 650, 655 (Pa. Super. 2021) (citations omitted). Moreover, it is well settled that, following a lawful traffic stop, "additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions." *Wright*, 224 A.3d at 1109 (citation and quotation marks omitted). Again, the trial court did not determine when primary traffic stop concluded, and, if it was before Officer Assad directed Appellant to move toward his partner, the court did not analyze whether the officer possessed reasonable suspicion to continue to detain Appellant.

Thus, because we conclude that, in light of *Barr* and *Alexander*, there remain several factual determinations that must be made in the first instance by the trial court, we vacate the judgment of sentence and remand for reconsideration of Appellant's suppression motion. *See Yandamuri*, 159 A.3d at 516. We also direct the court to consider whether the officer's "plain view" of the firearm was impacted by the preceding frisk (which garnered no contraband), and whether the continued detention of Appellant was part of the initial traffic stop, or a new investigation, that must be supported by reasonable suspicion.[13]

_____

[13] In light of our disposition, we decline to address Appellant's argument concerning his alleged inculpatory statements. Indeed, the trial court did not

*(Footnote Continued Next Page)*

- 16 -

Judgment of sentence vacated.  Case remanded for proceedings consistent with this Memorandum.  Jurisdiction relinquished.

Judge Bowes joins the memorandum.

Judge Stabile files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/08/2022

---

determine whether the statement introduced by the Commonwealth at trial was properly obtained.  If, upon remand, the trial court determines that the seizure of the firearm was lawful, then it should also address Appellant's argument regarding his statement to police.