J-S33024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JONATHAN WILLIAM OLSON | : | |
| | : | |
| Appellant | : | No. 1616 MDA 2023 |

Appeal from the Judgment of Sentence Entered October 31, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001374-2023

BEFORE:  OLSON, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED NOVEMBER 05, 2024**

Jonathan William Olson appeals from the judgment of sentence entered after he was convicted of possession with intent to deliver marijuana and drug paraphernalia, and duties at stop sign.[1]  He challenges the denial of his motion to suppress evidence.  We affirm.

On January 16, 2023, Pennsylvania State Police Trooper Dylan Adams and Trooper Healey[2] stopped Olson for running a stop sign.  During the stop, Trooper Adams found a bag of marijuana in Olson's pocket, leading to the charges in this case.  On May 12, 2023, Olson moved to suppress evidence. The trial court held a hearing on the motion on June 16, 2023, at which the Commonwealth presented the testimony of Trooper Adams.

_____

[1] 35 P.S. § 780-113(a)(30) and (32) and 75 Pa.C.S. § 3323(b), respectively.

[2] Trooper Healey's first name does not appear in the record.

The trial court articulated its findings of fact on the record:

>    We have taken the testimony today of Trooper Dylan Adams of the Pennsylvania State Police regarding a traffic stop that he and his rookie commenced on January 16th, 2023, in Red Lion Borough. The testimony would indicate that the trooper observed a silver Toyota roll through a stop sign on East Avenue at South Main Street in Red Lion. Trooper Adams was the passenger in the patrol vehicle, Trooper Healey was the driver. A traffic stop ensued with lights and sirens indicated. [Olson], who was the driver of the vehicle, did pull over. He was driving a foreign vehicle such that the driver's seat was located on the right side of the vehicle where we would normally see a passenger seated.
>
>    Trooper Healey approached the driver's side, Trooper Adams originally approached the passenger side, and then moved over to the driver's side. [Olson] was the operator of the vehicle. The window was down. The trooper smelled the odor of raw marijuana emanating from the vehicle. He asked [Olson] if he had a medical marijuana card, which [Olson] indicated that he did. [Olson] was observed to be very nervous with hands shaking and shallow breathing. He was asked if he had smoked marijuana any time recently. He indicated that he had smoked earlier in the day about noon, which would have been 12 hours earlier. He acknowledged the traffic violation of rolling through the stop sign. When asked if he had any marijuana in the vehicle that would explain the odor, he said he did not have any weed with him. The trooper asked [Olson] to exit the vehicle and he requested permission to do a pat-down for safety purposes. At that time a bag of marijuana was found in [Olson's] pocket.

N.T., 6/16/23, at 33–34.

The trial court denied suppression and later denied Olson's motion for reconsideration. On October 31, 2023, Olson proceeded to a stipulated bench trial. The trial court found Olson guilty of the above crimes and sentenced him to 9 to 23 months of confinement and a consecutive 1-year term of probation. Olson timely appealed. Olson and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Olson presents one question for review:

Did the trial court err in denying [Olson's] motion to suppress by finding that [Trooper Adams'] request of [Olson] to exit his vehicle for the sole purpose of investigating the odor of marijuana did not require independent reasonable suspicion in opposition to this Court's opinion in **Commonwealth v. Mattis**, 252 A.3d 650 (Pa. Super. 2021)?

Olson's Brief at 4.

When this Court reviews an order denying suppression, we must

determine:

whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.[3] Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. Hobel**, 275 A.3d 1049, 1054 n.3 (Pa. Super. 2022)

(citation and ellipsis omitted).

A traffic stop during which a reasonable person would not feel free to

leave is an "investigative detention," which requires the police to possess

_____

[3] It is an appellant's responsibility to ensure the certified record is complete. **Commonwealth v. Preston**, 904 A.2d 1, 7–8 (Pa. Super. 2006) (*en banc*). In this case, the certified record does not include the video from the dashboard camera. The scope of our review is thus limited to the suppression transcript.

reasonable suspicion of criminal activity. *Commonwealth v. Ochoa*, 304 A.3d 390, 398 (Pa. Super. 2023) (holding that a reasonable person is not free to leave a traffic stop while the police still have the person's driver's license). We have outlined the standard for whether an officer had reasonable suspicion to initiate (or prolong) an investigative detention:

> [T]he fundamental inquiry is an objective one, namely, whether the facts available to police at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. Reasonable suspicion is dependent on both the quantity and quality of the information police possess prior to detaining an individual. In order to assess the facts available to police, we must consider the totality of the circumstances. While reasonable suspicion is a less stringent standard than probable cause, the detaining officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.

*Commonwealth v. Muhammad*, 289 A.3d 1078, 1087 (Pa. Super. 2023) (quoting *Commonwealth v. Jefferson*, 256 A.3d 1242, 1248 (Pa. Super. 2021)). The assessment of reasonable suspicion is not limited to factors that clearly indicate criminal conduct; "even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (Pa. 2004) (citation omitted).

Notably, police require reasonable suspicion to prolong a traffic stop beyond the time needed to complete the "mission" of addressing the violation that led to the stop. *Commonwealth v. Galloway*, 265 A.3d 810, 815 (Pa. Super. 2021) (expounding upon *Rodriguez v. United States*, 575 U.S. 348 (2015)). This applies even to actions that are permissible during a stop, such

as directing the driver to exit the vehicle. **Mattis**, 252 A.3d at 655. In **Mattis**, we held that an officer seeking "information unrelated to the initial traffic stop" lacked reasonable suspicion to order a driver out of his car based only upon the driver's nervousness. **Id.** at 655–56 (following **Commonwealth v. DeHart**, 745 A.2d 633 (Pa. Super. 2000)).

Here, Olson's argument is twofold: (1) Trooper Adams prolonged the investigative detention beyond the time needed to complete the mission of the traffic stop by directing Olson out of the car and (2) in doing so, Trooper Adams lacked reasonable suspicion that Olson was engaged in criminal conduct. We accept the first part of his argument for purposes of analysis and find that Olson's challenge fails on the second. This issue implicates the status of marijuana in Pennsylvania and Trooper Adams' specific observations of Olson.

Under the Medical Marijuana Act, 35 P.S. §§ 10231.101–10231.2110, it is not *per se* illegal to possess marijuana in Pennsylvania. **Commonwealth v. Barr**, 266 A.3d 25, 41 (Pa. 2021). Although the smell of marijuana alone cannot justify a warrantless search (a higher standard than reasonable suspicion), it "may be considered as a factor in examining the totality of the circumstances." **Id.** at 44. Importantly, medical marijuana patients may not smoke medical marijuana; an indication that a person smoked marijuana can give rise to further investigation. **Id.** at 46 (Dougherty, J., concurring in part) (citing 35 P.S. § 10231.304(b)(1)). Likewise, it remains illegal to drive with

- 5 -

any amount of marijuana in one's blood. ***Commonwealth v. Dabney***, 274 A.3d 1283, 1292 (Pa. Super. 2022).

By the time he directed Olson to exit the car just after midnight on January 16, 2023, Trooper Adams had smelled raw marijuana and observed Olson's medical marijuana card. Olson had admitted to smoking marijuana approximately 12 hours earlier yet denied that there was any marijuana in the car despite the smell. Taken together, these factors provided Trooper Adams with reasonable suspicion to further investigate whether Olson had used marijuana impermissibly despite his medical marijuana card.

The odor of marijuana alone could have been insufficient to prolong the stop, especially after Olson presented a medical marijuana card to Trooper Adams. However, Olson's admission to smoking marijuana gave Trooper Adams a reason to investigate whether Olson was complying with the Medical Marijuana Act. Olson's statement that there was no marijuana in the car did not agree with Trooper Adams' own sense of smell, which supported an inference that Olson was trying to hide marijuana that he was possessing illegally. Finally, it would have been reasonable to investigate the effects of Olson's admitted non-legal use of marijuana 12 hours before driving.[4] Because the factors in this case exceed the smell of marijuana alone, or

---

[4] Trooper Adams testified he did not intend to conduct field sobriety tests because he did not see any signs of impairment or smell any burnt marijuana. However, in our "objective" inquiry, we note that signs of impairment may not be required to investigate whether a driver has any amount of marijuana in his blood, where the driver admits to smoking marijuana 12 hours prior.

Olson's nervousness alone, we conclude that Trooper Adams possessed reasonable suspicion to further investigate and direct Olson out of the car. We affirm the denial of suppression.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/05/2024