J-S02035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HASAN MALEK CHESTER | : | |
| | : | |
| Appellant | : | No. 1423 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 24, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004486-2022

BEFORE: LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MAY 5, 2025**

Hasan Malek Chester appeals from the judgment of sentence entered following his convictions for firearms not to be carried without a license, possession of a controlled substance, possession of a small amount of marijuana, and possession of drug paraphernalia.[1] He challenges the court's denial of his suppression motion. We affirm.

Following a traffic stop, police arrested Chester for the above offenses. Chester filed a pretrial motion to suppress physical evidence and statements he made during the stop of his vehicle. He claimed that police illegally prolonged the stop and that they seized him and conducted a search without a valid warrant, consent, reasonable suspicion, or probable cause. The court held a hearing where the Commonwealth presented the following evidence.

_____

[1] 18 Pa.C.S.A. § 6106(a)(1); 35 P.S. §§ 780-113(a)(16), (31), and (32), respectively.

Officer Michael Brodzinski testified that he was on patrol on June 29, 2022, when he observed a vehicle with "a tinted front windshield, tinted side windows and . . . a tinted license plate cover" that obscured the license plate. N.T., Motion to Suppress Hearing, 8/17/23, at 8, 9. He testified that the tinted windshield and the obstructed license plate were both Vehicle Code violations. *Id.* at 9. Officer Brodzinski initiated a traffic stop and encountered Chester who was in the front passenger seat. *Id.* at 11. When he approached the vehicle, he noticed "a very strong odor of fresh marijuana emanating from inside the vehicle." *Id.* at 12. The vehicle belonged to Chester, though it was not registered in his name. *Id.* at 24. The driver, Chyna, did not have her physical license with her, but Officer Brodzinski learned from a database search that she had a suspended license. *Id.* at 12, 16. While speaking with her, Officer Brodzinski asked if there was any weed in the vehicle, and she responded that there was not. *Id.* at 26. He then asked her if she and Chester were smoking marijuana, and she replied that Chester "had smoked before he left the house." *Id.*

Officer Brodzinski confirmed that the driver indicated that Chester had smoked marijuana, as opposed to vaping marijuana. *Id.* at 41. He testified that after he investigated the traffic offense, he was going to issue a verbal warning but needed to "make sure [Chester was] able to drive." *Id.* at 30. Officer Brodzinski then returned to the vehicle and asked Chester to step out. *Id.* at 17. He asked Chester if he had any marijuana on his person or if there was any marijuana in the vehicle. Chester replied "that he had an eighth of

marijuana inside the car." ***Id.*** at 17, 31. Officer Brodzinski then asked if he could search the car and Chester consented. ***Id.*** at 17, 19. The search uncovered "a large sandwich bag containing marijuana as well as new and unused sandwich bags" inside the glovebox. ***Id.*** at 19. Officer Brodzinski asked if he could search the trunk. ***Id.*** Chester did not consent. ***Id.*** Officer Brodzinski arrested Chester for possession of marijuana and a search of Chester's person incident to the arrest revealed a "pocket full of money." ***Id.*** at 21.

Officer Brodzinski then applied for a search warrant for the car. The warrant application included an affidavit stating "that persons distributing quantities of illicit narcotics or transporting illegal firearms, such as Chester, is [sic] a drug trafficker." Commonwealth Exhibit 3 ("Search Warrant"), dated 6/29/22 at 3 (capitalization removed). The affiant further explained:

> Such traffickers must engage in a preparation process prior to distributing narcotics. Given the nature of this process, your affiant knows that based upon his training and experience that traffickers, such as Chester, commonly store quantities of narcotics in vehicle(s) operated/owned by them, or a close associate, and/or family member that allows the trafficker direct control over the vehicle. Also, such a practice of maintaining direct control over a vehicle minimizes the trafficker's chances of apprehension of "rip-offs" from other dealers and/or drug users and law enforcement. Your affiant also knows that it is common for traffickers to keep other items related to their drug trafficking in vehicles operated by them, or a close associate and/or family member, such as a supply of illicit narcotics, proceeds from drug sales, monies/assets, tally sheets, and/or firearms to protect their stash from being robbed.

*Id.* (capitalization omitted). The warrant was granted, and a search of the car revealed a firearm in the trunk. Officer Brodzinski stated that prior to the search of the trunk, he did not recover anything in the vehicle that would indicate that there was a firearm in the vehicle. N.T., Motion to Suppress Hearing at 39.

The court denied Chester's motion to suppress. He proceeded to a bench trial after which the court found him guilty of the above-referenced crimes. The court sentenced Chester to an aggregate term of 18 to 36 months in prison followed by two years reporting probation. Following the grant of Chester's post-sentence motion, the court resentenced Chester to 11½ to 23 months' incarceration followed by three years' reporting probation. This timely appeal followed.

Chester raises the following questions:

> I) Whether the court below erred when it denied Mr. Chester's suppression motion since police unlawfully prolonged the seizure without any legal justification after the purpose of the initial traffic stop ended?
>
> II) Whether the court below erred when it denied Mr. Chester's suppression motion since police lacked probable cause to support the issuance of a warrant to search his vehicle or its trunk?

Chester's Br. at 5.

When reviewing the denial of a suppression motion, we must determine "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Ochoa*, 304 A.3d 390, 396 (Pa.Super. 2023) (citation

omitted). Our standard of review is *de novo* and our scope of review is limited to "the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole." ***Id.*** (citation omitted). We review only the suppression record and do not consider evidence presented at trial. ***See id.***

Chester claims that the officer illegally prolonged the traffic stop without legal justification. He maintains that despite his intention to give a verbal warning, Officer Brodzinski "unlawfully ordered Mr. Chester from his car, pestered him about 'weed', and continued the seizure pending a search warrant application." Chester's Br. at 16. Chester claims that the police did not have reasonable suspicion and lacked authority to arrest him when he refused to consent to a search of the trunk of his vehicle. He further claims that neither the smell of marijuana nor the driver's statement that Chester had previously "ingested" marijuana justified "Mr. Chester's prolonged seizure." ***Id.*** at 16, 17. Chester points out that the police did not ask Chester if he had a medical marijuana card or conduct a field sobriety test, and nothing in the vehicle indicated that there may have been firearms in the vehicle. ***Id.*** at 17.

"Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures by police in areas where individuals have a reasonable expectation of privacy." ***Commonwealth v. Boyd***, 296 A.3d 1270, 1274 (Pa.Super. 2023) (citation omitted). "Traffic stops based on a

reasonable suspicion[] either of criminal activity or a violation of the [] Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose." ***Commonwealth v. Harris***, 176 A.3d 1009, 1019 (Pa.Super. 2017) (cleaned up). Once police have completed the purpose for which they conducted a traffic stop, any further detention is an investigative detention requiring reasonable suspicion. ***Commonwealth v. Mattis***, 252 A.3d 650, 656 (Pa.Super. 2021).

"An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." ***Rodriguez v. United States***, 575 U.S. 348, 355 (2015). Reasonable suspicion depends on the totality of the circumstances. ***See Commonwealth v. Sanchez***, 326 A.3d 926, 933 (Pa.Super. 2024). "In making this determination, we must give due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." ***Id.*** (alternation in original and citation omitted). Furthermore, the inquiry is not limited to "only those facts that clearly indicate criminal conduct" but also "a combination of innocent facts, when taken together, may warrant further investigation by the police officer." ***Id.*** (citation omitted)

"Beyond determining whether to issue a traffic ticket, an officer's mission" may include inquiring as to the driver's licenses, outstanding warrants for the driver, as well as the vehicle's registration and insurance.

*Rodriguez*, 575 U.S. at 355. An officer also has the right to request occupants to exit the vehicle during a traffic stop, "even absent a reasonable suspicion that criminal activity is afoot." *Commonwealth v. Palmer*, 145 A.3d 170, 173 (Pa.Super. 2016) (quoting *Commonwealth v. Pratt*, 930 A.2d 561, 564 (Pa.Super. 2007)). However, "[a] seizure justified only by a police-observed traffic violation, . . . become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation." *Rodriguez*, 575 U.S. at 350-51 (alterations in original) (citation and internal quotation marks omitted).

Here, Officer Brodzinski conducted a traffic stop of Chester's vehicle for two Vehicle Code violations, a tinted windshield and an obstructed license plate. *See* N.T. Suppression Motion, at 8-9; 75 Pa.C.S.A. §§ 4524(e)(1), 1332(b)(5). Officer Brodzinski then learned that the driver's operating privileges were suspended. *See* 75 Pa.C.S.A. § 1543(b) (operator of a vehicle is not permitted to drive while license privilege "is suspended or revoked"). While speaking with the driver, he asked if there was marijuana in the car and if they had smoked marijuana. At this point, she stated that Chester had previously smoked at home. The trial court determined that Officer Brodzinski had reasonable suspicion to ask Chester about marijuana based on the smell of fresh marijuana and the driver's statement that Chester had previously smoked marijuana at home. We agree.

Following the enactment of the Medical Marijuana Act ("MMA"), "marijuana no longer is *per se* illegal in this Commonwealth."

- 7 -

***Commonwealth v. Barr***, 266 A.3d 25, 41 (Pa. 2021). However, the possession of marijuana remains illegal under the Controlled Substance, Drug, Device and Cosmetic Act, unless the requirements of the MMA have been met. ***See id.*** Furthermore, the MMA prohibits the smoking of marijuana. ***See*** 35 P.S. § 10231.304(b) ("It is unlawful to: (1) Smoke medical marijuana").

Thus, we have concluded that the odor of fresh marijuana, without more, is insufficient to support a finding of reasonable suspicion. ***See Commonwealth v. Lomax***, No. 470 MDA 2021, 2022 WL 439087 at *4 (Pa.Super. filed Feb. 14, 2022) (unpublished mem.). However, the smell of fresh marijuana coupled with additional factors may give rise to reasonable suspicion. ***See Commonwealth v. Jefferson***, No. 365 MDA 2023, 2024 WL 457727 at *4 (Pa.Super. filed February 6, 2024) (unpublished mem.), *appeal denied*, 322 A.3d 149 (Pa. 2024) (finding reasonable suspicion where officer smelled fresh marijuana during traffic stop of defendant who was increasingly nervous and was not a resident of Pennsylvania and therefore unable to possess marijuana under the MMA).

We conclude that Officer Brodzinski had reasonable suspicion to ask Chester about marijuana. At the time of his inquiry about the marijuana, the initial purpose for the stop had been fulfilled. He had obtained the driver's information, identified that the vehicle belonged to Chester, and learned that the driver's operating privileges were suspended. As such, Officer Brodzinski's questioning regarding marijuana required a showing of reasonable suspicion. ***See Mattis***, 252 A.3d at 656 (concluding trooper's request for appellant to

- 8 -

exit vehicle amounted to investigative detention requiring reasonable suspicion where request was unrelated to initial reason for traffic stop for speeding). The driver's statement that Chester had smoked marijuana before they got in the car and the officer's detecting the odor of fresh marijuana when he first approached the car gave him a reasonable suspicion that there might be marijuana in the vehicle. The trial court committed no error in denying Chester's motion.

Chester's remaining issue challenges the search warrant for the vehicle. He claims that the warrant lacked probable cause. He maintains that the items police recovered from inside the vehicle, and which they cited in the warrant application, were "not *per se* indicia of criminal activity, and the affidavit's references to them does not support a probable cause finding." Chester's Br. at 21. He likens his case to **Commonwealth v. Scott**, 210 A.3d 359, 365 (Pa.Super. 2019), where this Court found an officer did not have probable cause to conduct a warrantless search of the trunk of a vehicle based on "the odor of burnt marijuana and small amount of contraband recovered from the passenger compartment[.]"

A search warrant must be supported by probable cause. U.S. Const. amend. IV; Pa. Const. art. I, § 8. Probable cause exists to issue a warrant "where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." **Commonwealth v. Torres**, 177 A.3d 263, 269-70 (Pa.Super.

2017) (citation omitted). When presented "with an application for a warrant, [a] magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." ***Commonwealth v. Boyd***, 296 A.3d 1270, 1275 (Pa.Super. 2023) (cleaned up).

Here, the trial court concluded that based on the information in the affidavit, there was sufficient probable cause to issue a search warrant for the trunk of the vehicle. This information included the following:

> Detective Sean Johnson stated in the Affidavit of Probable Cause that Officer Brodzinski smelled marijuana after initially approaching the vehicle. During the search of the vehicle, he discovered not just the 1/8 of marijuana that [Chester] admitted to having in the vehicle, but an additional amount of marijuana in the glove box along with unused sandwich baggies. When Officer Brodzins[k]i asked [Chester] if he could search the trunk of the vehicle, [Chester] immediately denied. The Affidavit also contained information explaining that, in the detective's training and experience, he knows that people who have significant quantities of narcotics in their vehicles as well as packing materials, are drug traffickers. They also commonly transport firearms in their vehicles and store their narcotics in their vehicles to maintain control over them.

Order Denying Motion to Suppress, filed 11/3/23, at 9. The suppression court's factual findings are supported by the record and its legal conclusions drawn from those facts are correct.

According to the affidavit of probable cause provided in support of the warrant application, upon approaching Chester's vehicle, Officer Brodzinski smelled fresh marijuana and learned from the driver that Chester had previously smoked marijuana. Affidavit of Probable Cause at 3. During the consent search of the vehicle, he recovered a large sandwich bag of fresh marijuana as well as new and unused sandwich bags of a sort often used for packaging marijuana. *Id.* The affiant explained that in his experience a "person[] distributing quantities of illicit narcotics or transporting illegal firearms, such as Chester, is a drug trafficker." *Id.* (capitalization omitted). He further explained that "it is common for traffickers to keep other items related to their drug trafficking in vehicles operated by them, or a close associate and/or family member, such as a supply of illicit narcotics, proceeds from drug sales, monies/assets, tally sheets, and/or firearms to protect their stash from being robbed." *Id.* Viewing the totality of the circumstances, the search warrant was supported by probable cause.

Moreover, Chester's reliance on *Scott* warrants no relief. *Scott* involved the warrantless search of a vehicle. *Scott*, 210 A.3d at 361. Officers there smelled burnt marijuana coming from Scott's vehicle and saw smoke coming from the vehicle. *See id.* Officers also saw Scott try to place a marijuana blunt in the center console of the vehicle. *See id.* Officers conducted a warrantless search of the car and recovered a firearm from the trunk. The trial court suppressed the gun, and this Court affirmed. We pointed out that beyond the smell of burnt marijuana, there were no "other facts that could have supported

a belief that additional contraband was located in the trunk," and "the officer did not indicate that he had received any sort of special training to support his belief that additional contraband was located in the trunk." *Id.* at 364-65. Here, in contrast, the affiant explained his special knowledge and training in the area of drug trafficking and narcotics and opined that drug traffickers, such as he believed Chester was, "commonly store quantities of narcotics in vehicle(s) controlled by them[] or a close associate." Affidavit of Probable Cause at 3. Furthermore, here, unlike in *Scott*, the officer smelled and recovered fresh marijuana from the vehicle, supporting a reasonable belief that additional quantities might be in the vehicle.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/5/2025